UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

...............................................................x

UNITED STATES OF AMERICA,

      -v-                                  No.  16-CR-826-LTS

WILFREDO GONZALEZ,

          Defendant.

...............................................................x

### SEALING AND SCHEDULING ORDER

      The Court has received Defendant Wilfredo Gonzalez's pro se motion for a reduction in sentence pursuant to 18 USC § 3582(c)(1)(A) dated March 8, 2023.  Because the attachments to Mr. Gonzalez's motion papers include sensitive records, such as medical information, the Court will file those attachments separately under seal.  The Court will hold Mr. Gonzalez's request for appointment of counsel in abeyance pending briefing of his motion.

      The Government is directed to file its response to Mr. Gonzalez's motion by **April 12, 2023**.  The Government may request that the Court file under seal medical records that are included in the Government's response, and sensitive medical information may be redacted from the response that is filed on ECF.  A complete, unredacted courtesy copy of the Government's response must be provided to Mr. Gonzalez and emailed to Chambers via SwainNYSDCorresp@nysd.uscourts.gov.  Mr. Gonzalez's reply to the Government's response, if any must be filed by **May 3, 2023**.  Chambers will mail a copy of this Order and the docket sheet to Mr. Gonzalez.

      SO ORDERED.

Dated: New York, New York
      March 15, 2023

       /s/ Laura Taylor Swain
      LAURA TAYLOR SWAIN
      Chief United States District Judge

**Mail to**:

Wilfredo Gonzalez
78696-054
FCI Ray Brook
Federal Correctional Institution
P.O. Box 900
Ray Brook, NY 12977

# EXHIBIT

March __8th__ , 2023


Clerk, US District Court
Southern District of NY
500 Pearl Street
New York, NY  10007

    Re: United States v Wilfredo Gonzalez aka Alfredo Gonzalez
        Crim No:  16-cr-826-03
        USM  No:  #78696-054


    Subj:  Filing of Motions

Dear Clerk:

Please find enclosed for filing, a Letter of Character to the
Honorable Judge Laura Taylor Swain; a Motion for the Reduct-
ion of Sentence / Compassionate Release, pursuant to [§] 603
of the First Step Act; Exhibits, with Certificate of Service.

As a professional courtesy and pursuant to 28 USC § 753(f);
28 USC § 2250, I am requesting copies of all documents filed,
as this filing is in relation to post conviction relief and I
am not afforded access to a copier @ FCI Ray Brook, as the []
administration here deters individuals from filing motions.

Please note, I am also requesting the appointment of counsel,
pursuant to 18 USC § 3006A(a)(2)(B), because I am indigent; in
the informa pauperis status.

Thank you very much for your time and consideration in this
matter.  Please advise and GOD Bless.  Note:  May I also be
forwarded a copy of my docket/text sheet, to reflect the act-
ual filing of the enclosed.

Sincerely,

/s/  _Wilfredo Gonzalez_

    WILFREDO  GONZALEZ
    FCI Ray Brook
    PO Box 900
    Ray Brook, NY  10007

March 8th , 2023

HONORABLE LAURA TAYLOR SWAIN
UNITED STATES DISTRICT JUDGE
Southern District of New York
500 Pearl Street
New York, NY  10007

    Re:  United States v Wilfredo Gonzalez aka Alfredo Gonzalez
          Crim No: 16-cr-826-03
          USM  No: #78696-054

    Subj:  Letter of Character [Renewed Way of Thinking]

Dear Judge Taylor Swain:

Please accept this personal missive, as a letter of character,
I wish to submit to this Honorable Court, in conjunction with
my request for Compassionate Release / Reduction in Sentence,
pursuant to 18 USC § 3582(c)(1)(A)(i), for extraordin[ary] and
compelling reasons.

Your Honor, first and foremost, I wish to apologize to you and
this Court, for my past criminal behavior and indiscret[ions].
I also wish to apologize to my victims, in the instant offense.
I am sorry, as I have remorse, for my past associations, [and]
friendships and I pray this Honorable Court will accept such.

Ma'am, while I do believe in positive reinforcement, I do not
believe that prison is the place for relaxation, where [one]
lays around idly, and lives willny-nilly off of the tax payers
dime.  Personally, I haven't been able to rest, or obtain [a]
suitable level of comfort, since my inception into the Bureau
of Prisons.

Fifty Percent [50%] of my days, are spent looking at my life
in hindsight; retrospect; all of the people I have hurt; my
beloved Mother, Zanaida Silva; and my [2] two beautiful child-
ren, Jaylen and Kailey Gonzalez.  I understand now, the, care-
less and foolish mistakes I have made.  This period of incarc-
eration, has allowed me to see my recklessness.  I think about
my negative impact on my community, my family and how my ....
decisions have affected them.  For these reasons, I have true
and sincere remorse, which is continued each day. I pray too
GOD each day for forgiveness.

The other fifty percent [50%], I must say, is spent in medita-
tion, reflection, reading the Bible and building [a] stronger
relationship with GOD, educational and vocational training and
reading a plethora of self-help books; anything and everything
that is conducive to growth, maturity and productivity.  I've
worked tirelessly mending broken relationships, with my loved
one.  As a result of my **RENEWED WAY of THINKING**, I am not the
same individual, who appeared before this Honorable Court over
[5] five years ago.

Your Honor, this Court is aware of my representation, of [the]
closeness that I share with my beloved Mother, Zanaida Silva.
Throughout my life, my Mother was the only constant in my life.
I am my Mother's only child, through the union of my beloved
Father, Alfredo Gonzalez, whom I rarely knew, and had very ...
little contact with.  Of my maternal siblings, whom are all []
deceased, I am the youngest.  My beloved Brother, Tito Morales
was shot in April of 1989, when he was mistaked for a gang ...
member; my beloved Sister, Sol (Rosie) Martinez, was also mur-
dered in 1990, by a violent gang, who beat her to death and my
beloved sister Terista, who at age 45, overdosed in 2009, too
which caused a very deep void in my life, at a very young age,
to which I am still traumatized to this day.

Ma'am, I have overcome all of my addictions to which I am very
proud.  I have earned my GED while in the [BOP], and I am very
much enrolled in North Country Community College, working [o]n
my associates degree.  I am using each day, to strive for ...
betterment.  My faith in GOD and my relationship with GOD, is
what gets me through each day.

Your Honor, my beloved Mother's health is deteriorating each
and every day.  Since I am her only living child, I feel it
is my responsibility to care for her.  She is stricken with
the following medical issues: (1) kidney, hypertension, diab-
etes, glucoma, cancer and has had multiple strokes, whild her
body is functioning on 35% of her (1) kidney.  She recently
had a stint placed in her leg, to her brain, with a camera,
to monitor certain activities.  I pray that I am allowed too
take care of her, for the remainder of her life.  Each day I
have anxiety, about her welfare and well-being, adding stress
to a very stressful situation.  I lost my beloved Father, due
to Covid and although were not as close as I would like too
have been, I was still affected by this loss, and the what ...
if's.  I also wish to be a better father to my children.  They
need me in their lives as well.

Judge Taylor Swain, mere words cannot begin to express the []
remorse that I have, for the past choices I have made and for

the damages I have caused and I look forward to being just as much - if not more - of a solution to the problem, as I [was] once a part of it.

Your Honor, I could go on and on and on about my grand ideas, dreams and aspirations, but I would much rather keep to [my] accomplishments thus far; which by my own admission, aren't as many as I'd like, but with the ongoing pandemic and short-age of staff @ FCI Ray Brook, including the "harsh" conditions @ Metropolitan Correctional Center [MCC], I have done the very best that I could do.  But I wish for Your Honor to know, that each and every course that I have taken, was done by my [own] volition.  And it is my desire to strive for excellence, so that I will, not only become, but remain a productive, law [] abiding citizen, because I have marketable skills.

With that being said, Your Honor, I humbly "throw" myself on the mercy of this Court and ask that Your Honor please take into consideration, my beloved Mother's "incapacitation," her living all alone; my traumatic past and childhood; overcoming my addictions; and most importantly, my post conviction rehab-ilitation, which shows contrition; remorse and responsibility.

Judge Taylor Swain, I truly appreciate and thank you for your time, patience and consideration in this matter.  GOD Bless.

Most Respectfully,

/s/ _Wilfredo Gonzalez_

WILFREDO  GONZALEZ
FCI Ray Brook
PO Box 900
Ray Brook, NY  12977-0900

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILFREDO GONZALEZ, PRO SE ) | CRIMINAL ACTION |
| PETITIONER, ) | |
| aka "ALFREDO GONZALEZ" ) | Case No: 16-cr-826-03 |
| ) | USM No: #78696-054 |
| v ) | HON LAURA TAYLOR SWAIN |
| ) | § § § § § § § |
| ) | EMERGENCY MOTION FOR REDUCTION IN |
| UNITED STATES OF AMERICA, ) | SENTENCE PURSUANT TO § 603 OF |
| ) | THE FIRST STEP ACT |
| RESPONDENT. ) | |
| | COMPASSIONATE RELEASE |

COMES NOW, WILFREDO GONZALEZ, petitioner, proceeding in pro se, in necessity, pursuant to Haines v Kerner, 404 US 519 - 520 (1972), humbly and respectfully moves this Honorable Court, too consider this motion for relief, under § 603 of the First Step Act, in light of the amended 18 USC § 3582(c)(1)(A)(i), for the extraordinary and compelling reasons, which the Petitioner will outline and further state herewithin.

Petitioner urges this Honorable Court, to consider this [] EMERGENCY filing, with his IMMEDIATE RELEASE, with the Modification of his supervised release, to reflect home confinement [] with GPS monitoring, pursuant to 18 USC 3583(e)(4).

Petitioner, who is indigent, now proceeds in pro se, in

Pg 1 of 30

necessity, and informa pauperis status.  The Appointment of Co-
unsel, is now being requested.

§ § § § § §

## THE APPOINTMENT OF COUNSEL

Petitioner in this action, request[s] the Appointment of
Counsel, pursuant to 18 USC § 3006A(a)(2)(B), un the Criminal
Justice Act of 1964; under the guarantees and provisions which
are outlined in the Sixth and Fourteenth Amendment[s], too the
United States Constitution.

In support thereof, Petitioner WILFREDO GONZALEZ, aver[s]
to the following:

1) Petitioner is indigent; in the informa pauperis status,
and cannot afford to retain adequate counsel;

2) Petitioner is unskilled and unversed in the application
of federal law; as well as being unable to articulate a reply
or traverse to [a]ny Government response, due to lack of legal
resources;

3) Because of the ongoing Covid-19 pandemic, the restrict-
ions from such and the shortage of staff @ FCI Ray, Petitioner
does not have ample or adequate access to a law library [for]
legal research or assistance; see Bounds v Smith, 430 US 817,
97 SCt 1491, 1498 (1977)(holding that the right to access too
the courts, includes a right to either adequate law libraries

or assistance from persons trained in the law ...); also see Al
Odah v united States, 346 F Supp 2d, 1, 8 (D DC 2004)(determin-
ing that prisoners who did not have access to a law library, []
had [a]n obvious language barrier, and were certainly lack[ing]
a working knowledge of the american legal system, were entitled
to appointed - counsel, because it was [im]possible for them to
investigate their claim[s]).

Petitioner asserts, that in the interest of justice, [t]he
Appointment of Counsel, would be warranted in this action.

Pursuant to Fed R Crim Evid 201(c)(2), may it be judicial-
ly noted, that this Honorable Court has a <u>duty</u> to [a]ssign ...
Counsel to represent [a]n ideally indigent defendant in accord-
ance with his constitutional rights, under the Sixth and; Four-
teenth Amendment[s], to the United States Constitution, which
are guaranteed in <u>ALL</u> criminal proceeding, which includes, but
<u>NOT</u> limited to § 3582 matters, like other district courts, in
other circuits, including the Second Circuit.

Petitioner challenges, this is <u>NOT</u> a civil action, where
the Appointment of Counsel is discretionary.  Because this is
a criminal action, for the purpose of resentencing, appointing
counsel would be necessary, pursuant to 18 USC § 3006A(a)(2)
(B).

May it also be judicially noted, that pursuant to Johnson
v Avery, 393 US 483, 21 LED2d 71, 89 SCt 747 (1969)(hold[ing]
that jailhouse lawyers can assist other inmates with ... legal

work), Petitioner has had the assistance of another federal pri-
soner, who is <u>NOT</u> a lawyer, but has [a]n imminent transfer pend-
ing, and will <u>NOT</u> be able to assist Petitioner once he is no []
longer @ FCI Ray Brook.

§ § § § § §

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Per detailed supra, Petitioner WILFREDO GONZALEZ, filed a
request with the Warden @ FCI Ray Brook, seeking Compassionate
Release or a Reduction in Sentence, pursuant to Program State-
ment 5050.50; and under 18 USC § 3582(c)(1)(A)(i), which [was]
denied on May 14, 2020. See Exhibit A.

Petitioner now seeks relief, as he has exhausted his adm-
inistrative remedies.  See united States v Raia, 954 F3d 594,
595 (3rd Cir 2020).

Petitioner avers, he has met the exhaustion requirement,
per 18 USC § 3582(c)(1)(A).

Petitioner continues to proceed with this motion for the
Reduction in Sentence / Compassionate Release, in pro se, in
necessity.

Petitioner avers, that pro se litigants are generally ent-
itled to a liberal construction of their pleading, which should
be read, "to raise the strongest arguments [they] suggest.  See
Green v United States, 260 F3d 78, 83 (2nd Cir 2001)(quot[ing]

Graham v Henderson, 89 F89 F3d 75, 79 (2nd Cir 1996); see also,
Boag v MacDougall, 454 US 364 _____ SCt _____ (1982); Haines v
Kerner, 404 US 519-520 (1972); and Gomez-Diaz v United States,
433 F3d 788 (11th Cir 2005).

§ § § § § §

## LEGAL AUTHORITY

Petitioner challenges, that this Honorable court has [t]he
authority to grant Petitioner, WILFREDO GONZALEZ, [a] Reduction
in Sentence, under the amended provisions of 18 USC § 3582(c)(1)
(A)(i), as he has multiple reasons and circumstance, both indi-
vidually, as well as collectively, that are sufficiently extra-
ordinary and compelling, to warrant relief, under the analysis
outlined and intended by Congress, for Compassionate Relea[se]
and the Reduction in Sentence.

A sentence of imprisonment may only be modified in limited
circumstances.  See Dillon v United States, 500 US 817, 824 []
(2010).  Under section 3582(c)(1)(A), a court may reduce ... a
sentence if (1) "extraordinary and compelling reasons warrant
such a reduction;" (2) the reduction is consistent with appli-
cable policy statement issued by the Sentencing Commission;"
and (3) the sentencing factors set forth in 18 USC § 3552(a),
to the extent they applicable, warrant a reduction.

Petitioner avers, that in 2018, Congress passed, and [t]he

former President of the United States, DONALD J TRUMP, signed []
into law, the First Step Act which ushered in criminal-justi[ce]
reform and "amend[ed] numerous portions of the United States ...
to promote rehabilitation of prisoners and unwind decades ... of
mass incarceration." See United States v Brown, 411 F Supp 3d
446, 448 (SD Iowa 2019)(citing Cong Research Serv R45558, [The]
First Step Act of 2018; An Overview 1 (2019).

As part of those efforts, Congress amended the Compassion-
ate Release statute, by adding a provision that allows [a] def-
endant to seek relief directly from the courts by filing motion
or briefs, for Compassionate Release, after requesting such ...
relief from the warden of his/her institution.  18 USC 3582(c)
(1)(A)(i).

The change to the Compassionate Release statute, gives any
district court, [sentencing court], "the ability to grant a pr-
isoner's motion for Compassionate Release, even in the face of
BOP or Government opposition or it's failure to respond to a []
prisoner's request for Compassionate Release in a timely manner."
See United States v Young, 2020 WL 1047815, at *5 (MD TN 3/4/20).

Finally, district courts are free to determine, in the ex-
ercise of their discretion, what constitutes "extraordinary and
compelling," reasons for modifying a term of imprisonment under
18 USC § 3582(c)(1)(A).  To be sure, the Second Circuit has []
stated that district courts have "discretion to consider whether
any reasons are extraordinary and compelling.  See United States

Pg 6 of 30

v Brooker, 976 F3d 228, 237-238 (2nd Cir 2020).

Petitioner, WILFREDO GONZALEZ, respectfully submits this pro se filing, as he has extraordinary and compelling reasons, that include:  Federal Prison Conditions @ FCI Ray Brook; PTSD [Post Traumatic Stress Disorder; Troubled Childhood; and to be a Caregiver, for his 84 year old mother; as well as being [a] previous cigarette smoker, with a family history of diabetes, and cancer.

§ § § § § §

EXTRAORDINARY AND COMPELLING CIRCUMSTANCES

A. FEDERAL PRISON CONDITIONS

Title 18, USC § 4042(a)(2), mandates that the Bureau of Prisons, uphold it's obligations in the safekeeping and care for it's prisoner's.  It is the intent of this Petitioner, to challenge in multiple variances, where the Bureau of Prisons, has failed this Petitioner and other federal prisoners.

Petitioner in this action, WILFREDO GONZALEZ, challenges the [BOP] and it's violations of § 4042(a)(2), as well as his violations of his Fifth and Eighth Amendments.  Petitioner [] further challenges, his present conditions @ FCI Ray Brook, located in Ray Brook, NY; where due to it's grossly understaffed employees (administration and corrections officers), that it is currently a dangerous place to be housed and is a poten-

tial deathtrap.

The Department of Justice [DOJ], has recognizes the unique risks posed to inmates and [BOP] employees from Covid-19.  The DOJ recently adopted the position, that [a]n inmate who [pres]-ents with one of the risk factors identified by the CDC, should be considered as having [a]n "extraordinary and compelling rea-son," warranting a sentence reduction.  See United States v Kess No Cr ELH-14-480, 2020 US Dist LEXIS 105986, 2020 WL 3268093, at *3-4 (D Md 6/17/2020)(citation omitted).

Petitioner further challenges his confinement in [pri]son, stating that the [BOP] cannot comply with the mandate[s] of 18 USC § 4042(a)(2).  Petitioner seeks [a]n ORDER from this Court releasing him from custody, modifying his current term of imp-risonment, to reflect home confinement, with GPS monitoring in light of 18 USC  § 3583(e)(4) and 34 USC § 60541(g)(2)(A) under THE FAMILY REUNIFICATION PROGRAMS.  See United States v Cantu, 423 F Supp 3d 345, 347-48 (SD Tex 2019)(citation omitted).

Petitioner argues, the only [e]ffective way to minimize [] the potential devastation from Covid-19, Monkeypox, Flu and RSV in BOP facilities, and especially at FCI Ray Brook in particul-ar, is to downsize the incarcerated population immediately.

Petitioner argues, in short, that the fact of his confine-ment in prison itself, amounts to a direct violation of 18 USC § 4042(a)(2) and violation of the Fifth and Eighth Amendments, under these dire circumstances at FCI Ray Brook will alleviate

those violations.

Petitioner argues, that the conditions of his confinement;
and incarceration (including pre-trial detention), may become []
so ardous, that they may merit consideration in measuring a just
sentence.  See United States v Ciprian, 11 Cr 1032-74 (PAEO, 2021
US Dist LEXIS 18698, at *8 (SD NY 2/1/2021).

Petitioner further argues, that multiple courts have also
found that "harsh conditions of imprisonment, occassioned [by]
the Covid-19 pandemic, are NOT without more, sufficiently, ...
"extraordinary and compelling reasons," to warrant Compassionate
Release. See United States v Hatcher, Crim No: KPF 18-0454, 2021
US Dist LEXIS 74760, 2021 WL 1535310, at *3-4 (SD NY 4/19/2021)
(granting compassionate release, to a fully vaccinated woman --
where defendant proffered "a confluence of circumstances, [uni]-
que" to her case and beyond just the harsh conditions of incarc-
eration by the pandemic)(citing United States v Rodriquez, 492
F Supp 3d 306, 311 (SD NY 2020)); see also United States v Mc-
Rae, No 17 cr 643, 2021 US Dist LEXIS 8777, 2021 WL 142277, at
*5 (SD NY 1/15/2021)("[a] day spent in prison under extreme []
lockdown and in fear of contracting a deadly virus 'ex[acts]'
a price on a prisoner beyond that imposed by [a]n ordinary day
in prison, while not intended as punishment, incarceration [in]
such conditions is unavoidably more punishing").

Petitioner argues, that even after more than [3] three
years of the declaration of the worldwide, global [pan]demic

it is undisputed that there remains active and serious outbreaks of Covid-19, Flu, RSV and Monkeypox, throughout the entire BOP.

Petitioner argues, that the structure of BOP prisons; even that assuming **ALL** reasonable precautions and safety measure[s] being in place and fastidiously observed (which Petitioner disputes), it heightens the risk of transmission.  Vaccinated [or] not.  The cornerstone of the public health response to Covid-19, Flu, RSV and Monkeypox, is too practice "social distancing." [] Which is impossible, in [a]ny setting with the BOP.

Petitioner argues, that the Bureau of Prison's inability, even if it tried, to adequately protect him and other prisoners from the risks posed by the coronavirus and other respirat[ory] diseases, subjects Petitioner to substantial risk of suffering and harm, even death, as he's been exposed to Covid-19 since [] it's onset, which is clearly in violation of 18 USC § 4042(a)(2) as well as Petitioner's Fifth and Eighth Amendment[s], too the United States Constitution.

Petitioner argues, that when he was sentenced by this Honorable Court, nobody could have predicted that the term ... of his imprisonment could be rendered a death sentence by [a]n unprecedented worldwide pandemic.  But the unthinkable happened, and Federal Statutes and the Constitution of the United States as well as the amending of 18 USC § 3582(c)(1)(A), un[der] the First Step Act [FSA], making it possible for the Court to ... adjust his sentence accordingly.

Petitioner argues, that Federal Statutes and the Fifth and Eighth Amendment[s] to the United States Constitution, "forbid" cruel and unusual punishment; and do not allow a sentence to be served, in conditions considered "cruel" and "unusual" punishment, or would cause the Petitioner harm or death.

Title 18, USC § 4042(a)(2), and the Fifth and Eighth Amendment[s], "forbid" the Bureau of Prisons to place [a]ny federal prisoner in living conditions which could, or would, in essence cause certain death.  See 18 USC § 4042(a)(2), and the Fifth; and Eighth Amendment[s].

Petitioner argues, that all current and future persons who are incarcerated within the BOP, of [a]ny age, who experiences: chronic lung disease or moderate to severe asthma; serious heart conditions; conditions that can cause a person to be immounocompromised, including cancer treatment and smoking, ... bone marrow transplant; organ transplantation, immune deficiencies, poorly controlled HIV or AIDS or prolonged use of corticosteroids and other immune weakening medications; severs obesity as well as diabetes, chronic kidney disease or undergoing dialysis, or liver disease, are subject to death by Covid-19, Flu or RSV, including Monkeypox, even with the option of being vaccinated.

May it be judicially noted, that Petitioner is fully vaccinated and boosted, however, the science is now questionable,

about the efficiency of the vaccines from Pfizer, Johnson and Johnson, as well as Moderna.

Petitioner, WILFREDO GONZALEZ, presents these extraordinary and compelling reasons, that would warrant Compassionate Release and/or a Reduction in Sentence.

§ § § § § § §

B.  MEDICAL CIRCUMSTANCES

Petitioner asserts, that he is a previous cigarette [a]nd marijuana smoker.  Petitioner, before this period of incarceration, indulged in prescription medication, "oxy," and he also partook in drinking alcohol heavily.

Petitioner has experienced trauma, the majority of his [] life as a youth, and while not clinically diagnosed, it is ... believed that Petitioner has Post Traumatic  Stress Disorder; which is also known as [PTSD].

PTSD, is a disorder, that develops in some people, such, as Petitioner, WILFREDO GONZALEZ, who have experienced a shocking, scary or dangerous event.  It is well documented by this Honorable Court, in Petitioner's presentence report, all [of] the tragedies his family, especially his beloved Mother, ... ZENAIDA SILVA; the loss of his brother Tito, who was shot over [8] times; at the young age of 23, in the mid 80's; the loss of his sister Rosie, who was tragically beat to death, at the

tender age of 28, in the late 80's; several years after the []
murder of his brother Tito.   Then around 2009 Petitioner's ...
last living sibling, his sister Theresa, died from a drug over-
dose, in her late 30's, in turn, leaving Petitioner and his ...
Beloved Mother, ZENAIDA SILVA, depressed and distraught.   May
it be judicially noted, that after all of this tragedy, for [a]
single family, Petitioner's beloved Father, passed away, some-
time in April of 2020, one of the first casualties from the ...
"novel" coronavirus, leaving Petitioner, as his Mother's "sole'
living child and immediate relative.

Petitioner avers, that prior coming to federal prison, he
was "viciously" stabbed by [a]n unknown assailant, almost los-
ing his life, so he has had a lifelong history of "stressors."
See United States v Avalos, 856 Fed App'x 199, 205 (10th Cir []
2021)(stating, to be clear, we reverse solely on the basis of
the district courts erroneous finding, that being a former cig-
arette smoker was not a condition deemed to increase the risk
of complications from Covid-19, as identified by the CDC); see
also United States v Rich, 471 F Supp 3d 441, 446 (D NH 2020)
(" ... CDC acknowledges that smoking can render people immuno-
compromised, putting them in the high risk category").

Petitioner argues, that he also has a history of hyperten-
sion, which places him at high risk, for the possible contract-
ion of Covid-19, or any other respiratory disease.

Petitioner challenges, that scientific studies have proven

that Covid-19 vaccines and boosters, will <u>not</u> stop anyone from being infected.  See United States v Reyes, 2021 US Dist LEXIS 99864 (D Conn 5/26/2021)(granting compassionate release of a [] prisoner, who received both doses of the vaccine; "newly available data describe 'breakthrough infections' caused by Covid-19 variants in vaccinated populations").

The availability of vaccines, has <u>not</u> diminished the risk presented by Covid-19.  Petitioner argues, he has been vaccinated, but there is <u>NO</u> guarantee, that he cannot still contract Covid, like the Honorable President Joe R Biden; Dr Jill Biden and the Honorable Vice President Kamala Harris, individuals ... who were <u>ALL</u> vaccinated and boosted, yet, still contracted the coronavirus..

The difference for this Petitioner is, despite the increased availability of vaccines across the country, Covid-19, with no doubt, remains a life threatening risk to those in BOP custoday, and the conditions in federal detention facilities remain dire.  See the letter from the Federal Public & Community Defenders Legislative Committee to Members of Congress (May 4, 2021)[2]. Also see Exhibit B, Affidavit from Dr Brie Williams, MD.

Petitioner argues, long standing deficiencies in the BOP's healthcare services, insufficient quarantine space, no requirement for staff to take Covid test (although there was [a]n  ...

---

[2]https://www.fd.org/sites/default/files/news/2021.05.04_letter_from_federal_defenders_to_sjc

Executive Order from President Joe R Biden), the inability to social distance, and the fact that little over 62% of the BOP staff, have accepted the vaccine, have contributed to the continued spread and lethality of the spread of Covid-19 and any other respiratory disease in prison.   See Exhibit B, Affidavit from Dr Brie Williams, MD.

Petitioner argues, that a new study shows that Covid [w]as much more deadly to men than women, according to the Wall Street Journal. "Men died of complications from Covid-19 at a higher rate than women in both rural and urban parts of the US, during the first year of the pandemic, according to a new report.  The report, published by the National Center for Health Statistics, examined Covid-19 deaths by gender and group for 2020, when the virus became the third leading cause of death in the US and [] before vaccines against it became widely available.

Data revealed death rates were at least 70% higher for the male population, compared with females.  The greatest difference between the genders, was found in so called large central, metropolitan areas, where Covid-19 death rates were 78% higher ... for males, according to the report from the NCHS, part of the Centers for Disease Control and Prevention (CDC).[3]

These factors and many others, substantially increase the risk of death from Covid, for prisoners, such WILFREDO GONZAL-EZ, the Petitioner in this action.

---

[3] https://wallstreetjournal-ny-newsmemory.com?pubink

Petitioner challenges, that the Government always tries to downplay the number of covid cases, at each BOP facility.  The number still continue to climb and are inaccurate, at best, if actually reported.  District Judge Judith Levy, for the Eastern District of Michigan has quoted: "[z]ero confirmed Covid-19 ... cases, is NOT the same thing, as [z]ero Covid-19 cases." United States v Amarrah, 458 F Supp 3d, 611 2020 US Dist LEXIS 80396, Case No: 17-20464.

Judge Levy went on further to quote, "[b]ecause this disease is spread asymptomatically, simply meaning that well after the World Health Organization [WHO], declared the coronavirus [a] global, worldwide pandemic, this Honorable Court as well as the BOP, cannot take any comfort, in a lack of confirmed cases and all parties should be deeply concerned by the lack of universal testing of inmates and BOP staff alike.  See Amarrah, F Supp 3d 611.

Petitioner argues, they haven't tested for Covid @ FCI Ray Brook in quite some time.

§ § § § § §

C. CONDITIONS AT FCI RAY BROOK

On September 22, 2022, [2] corrections officers stated to local news medias, that FCI Ray Brook is, grossly understaff-

---

[2] www.pressrepublican.com/union-ray-brook-federal-prison-way-understaffed

ed.  Congresswoman Elise Stefanik states they are calling for more hiring and more pay for federal officials.  FCI Ray Brook has approximately 63 correctional officers, for over 915 plus federal prisoners.

Petitioner argues, that Union officials say FCI Ray Brook is dangerously short of staff.  A sign erected by the American Federation of Government Employee Local 3882, which represents employees at the facility reads:  "Dangerously Understaffed ... Federal Prison Ahead Are You Safe?"

Local 3882 President Darrell Pilon told news reporters in the media outlets, that staff like teachers and counselors are being "augmented" or assigned to cover vacant spots on the corrections officer rooster.

He went on to states, "[t]here are currently 63 correction officers," and "custody is at 61%."  [I]t was further noted by Darrell Pilon, this does not take into consideration, vacation leave, light duty, sick leave, military leave and paid maternal leave.  FCI Ray Brook, is authorized to currently employ up to 110 officers on 2016 guidelines.

Up until 2021, there were only 490 inmates housed @ FCI Ray Brook; today there is well over 915 inmates, with much ... less staff.

Union President Darrell Pilon went on to state, "[w]e are one of the lowest staffed prisons out here."  "Retention pay has been requested to help entice staff, that would ordinarily

retire, stay on.  It also extremely helps thos applying to see a much larger and higher starting pay, this is competitive with WalMart and Target, and other law enforcement agencies in the area as well.

Pilon states, that FCI Ray Brook has around $6 million in outstanding "IOU's," from the BOP/DOJ.  Pilon is quite optimistic, that the BOP/DOJ will **not** make good on this IOU.

Pilon reiterates, the staff shortage, puts everyone at ... risk; **not** only staff, but inmates and visitors alike.

Petitioner argues, because of the severe shortage of staff, and the continuous institutional lockdowns, the following will continue to occur:

a) Visitation being cancelled;

b) Various activities and programs being cancelled;

c) Inadequate medical care and attention,[2]

d) Law library closed, preventing inmates from litigation on time sensitive legal situations and denying access to the courts;

e) Religious services cancelled;

f) Denied commissary; being subjected to no soap, deodorant, toothpaste and basic incidentals;

g) Staff failing to follow CDC mandates and guidance; that they are required to follow and enforce;

h) Inmates being denied active participation in First Step Act courses; and the opportuniry to reduce their sentences;

---

[2] FCI Ray Brook has **NO** physician; **NO** psychologist; **NO** warden; **NO** dentist; **NO** optometrist; and school teachers and custodial staff often work the housing units as corrections officers, denying inmates programming.

i) Being served small portions of hot food, that is always cold;

And the list goes on and on ...

Subsequently, the BOP has violated it's own federal mandates, as well as Petitioner's constitutional rights, name[ly] his Fifth and Eighth Amendment[s], to the US Constitution ... that neither the BOP of the courts can figure out how to prevent and resolve this problem.

FCI Ray Brook is under seige, and ONLY this Honorable [] Court can resolve this matter, by GRANTING Petitioner's motion for the Reduction in Sentence / Compassionate Release.

§ § § § § §

D. PTSD - MENTAL HEALTH ISSUES - TROUBLED CHILDHOOD

Petitioner argues, that mental health issues, even in the absence of other serious medical issues, such as hypertension, asthma, previous cigarette smoker, ect, have been found to be grounds for Compassionate Release.

Petitioner argues, because of his traumatic youth, troubled childhood, and being the victim of a violent stabb[ing] ... where he almost lost his life, he has Post Traumatic Stress Disorder. He further contributes his PTSD, to the loss of all of his siblings, leaving him alone, to fend for himself, [i]n the brutal streets of New York.

Petitioner also attributes to his PTSD, the pandemic []

the loss of his Beloved Father, who died from Covid, and all of
the "stressors" affiliated with his 84 year Beloved Mother, who
is "incapacitated," lives alone and has no one to care for her.
Petitioner worries about his Beloved Mother, on a daily ba[sis].
And due to the shortage of staff @ FCI Ray Brook, and it's cont-
inuous lockdowns because of such, has disallowed him to obtain,
and receive much needed psychological treatment.  See United St-
ates v Rodriguez, 2020 WL 4592833, at *1 (SD Cal 8/5/2020)("cit-
ing [i]n part, 'the conditions of prison ... the mental consequ-
ence[s] of continued incarceration, 'in the midst of a global ...
pandemic, that places further stress on the body and on the imm-
unde system, at the same time, creating a majo depressive disor-
der or clinical depression, which in turn causes stress, which
imparis the immune system against viral infections, such as []
Covid-19, Monkeypox, RSV and Flu").

Petitioner concedes, that he struggles daily with is PTSD,
without the necessary and proper treatment, because it is not,
afforded @ FCI Ray Brook, because they have no psychologist, []
and with the shortage of necessary staff, it exuberates, with -
each and every lockdown.

Petitioner argues and reiterates, that @ FCI Ray Brook ...
there is NO psychologist, so he has NO professional outlet, to
vent to his current and past issues, those mainly, his Beloved
Mother, who is incapacitated and lives alone in the streets of
New York.  Petitioner is currently on multiple waiting lists []

for psychological treatment, and a course names "TRAUMA," that
is much needed.

Petitioner argues, that he was further traumatized by the
harsh conditions @ Manhattan Correctional Center, awaiting pre-
trial.  Under 18 USC § 3553(a), a District Court can consid[er]
harsh conditions of a defendant's pre-trial confinement, which
may mitigate merit, for a reduction in sentence.  Numerous courts
have agreed, that the Metropolitan Correctional Center [MCC], is
a facility which is harsh and inhumane, which warrant mitigation.

Petitioner argues, that the Second Circuit has held, that,
"pre-sentencing confinement conditions may in appropriate cases
be a permissible basis for a downward departure."  See United
States v Francis, 129 F Supp F 2d 612 (SDNY 2001)(departing one
level because of harsh conditions of ... confinement).

Likewise, District Courts have mitigated or departing down-
ward on the ground of the harsh conditions of the MCC of th[ose]
awaiting trial and sentencing.  See United States v Mendola, S2
02 Cr 499 (the Court took into consideration the harsh conditi-
ons of Mendola's confinement at MCC and departed from the recom-
mended sentence by [10] months); see also United States v Mateo,
299 F Supp 2d 201, 212 (SDNY 2004); United States v Hernandez-
Santiago, 92 F 3d 97, 101 (2nd Cir 1996)(the court departed [3]
three levels based on 22 months of harsh confinement in the fa-
cility); see United States v Behr, 2006 WL 1586563 *5 (SDNY).

Petitioner is a low level, low security prisoner, in [a]

a medium level facility.  See Exhibit C.

Petitioner argues, that as FCI Ray Brook continues too hemorrhage corrections officers, creating a dangerous environment, it continues to fill gaps with school teachers, case workers and maintenance staff, to monitor inmates and housing units; this [] is according to local union President, Darrell Pilon.

And because of the staff shortage and the malfesance with the medical staff, on or about November 3, 2022, inmate JEROME SHAW, Register Number: #77940-054, died while in the custody of FCI Ray Brook officials, because he was unable to receive [t]he proper and necessary medical treatment.

Petitioner argues, that in collusion with the harsh conditions @ FCI Ray Brook; the harsh conditions @ MCC, along [w]ith the everyday "stressors" of the ongoing pandemic, continues too take it's toll on Petitioner.  See United States v Johnson, F Supp 3d, 2020 WL 3041923 at *10 (D DC 5/16/2020)(finding extraordinary and compelling, the Movant[s] PTSD combined with ... prison conditions warrant relief); see also United States v Gudino, 2020 WL 7319432, at *1 (ND Cal 12/11/2020).

There should be a concern, that FCI Ray Brook, cannot provide adequate medical care for Petitioner's mental health; and district courts have granted relief in other case[s]:   United States v Crowell, No cv 16-107-JJM-LDA, 2020 WL 4734341, at *1 (D RI 8/14/2020)(holding that defendant's autoimmune disease, and the "less than appropriate" medical treatment he [has] re-

ceived from the BOP were extraordinary and compelling grounds, for a reduction in sentence); United States v Morrison, 2020 US Dist LEXIS 110734 (D MD 6/24/2020); United States v Teran, 2021 US Dist LEXIS 35742 (WD Was  2/25/2021); United States v Malone 2020 US Dist LEXIS 101169 (6/9/2020)(citations omitted).

Petitioner argues, that life has not been easy for him [] as a youth, growing up in a single parent home, in the streets of New York.  While Petitioner does not have any violence on [] record, he lived around violence daily, growing up, and he lost a sister and a brother, to extreme violence.  Having to survive in the streets of New York, Petitioner was faced with many ad-versities, leading him to a life of criminal behavior, to help put food on the table and assist his Beloved Mother with [t]he bills,  Now, she is incapacitated, and needs him more than ever. Petitioner had a troubled childhood, to say the least, and urges this Honorable Court to take these factors into consideration. See United States v DeJesus, 2022 US Dist LEXIS 71936; United States v Ramsay, 538 F Supp 3d at 424-25 (NY 2021); United Sta-tes v Ray Anthony Ramirez, No 98 cr 927 (CM), (2021 US Dist LE-XIS 217752, 2021 WL 5233512 (SDNY 11/10/2021)(granting sentence reduction to defendant, who, at 19 years old, was a leader in a drug trafficking organization, that distributed large quantities of heroin; from 1996-98, and participated in [2] two murders); United States v Glynn, No 06 cr 580 (JSR) 2022 US Dist LEXIS 32794, 2022 WL 562652 (SDNY 2/24/2022).

Petitioner urges this Honorable Court to consider [th]ese extraordinary and compelling reasons for relief.

§ § § § § §

### E.  FAMILY REUNIFICATION - INCAPACITATED PARENT

Petitioner concedes, that pursuant to 34 USC § 60541(g) and 18 USC § 3583(e)(4), he seeks consideration for Home Confinement in light of the above federal statutes, in conjunction with [§] 603, of the First Step Act.  See United States v Cantu, 423 F Supp 3d 345, 347-48 (SD Tex 2019)(citation omitted).

Petitioner relies on the US Sentencing Commission and it's updated proposal's, as to what is considered to be extraordinary and compelling.

Petitioner asserts, that his Beloved Mother, ZENAIDA SILVA is 84 years old, incapacitated, lives alone and has no immediate family member, to be her caregiver.

Petitioner avers, that his Beloved Mother has had the following medical issues:  (1) kidney; hypertension, diabetes, [] glucoma, cancer and multiple strokes, and her body is functioning on 35% of her kidneys.  This is the reason for this EMERGEN-CY FILING. See Exhibit D, Mother's Medical Documentation.

Petitioner avers, that with his Father in & out of his life, he grew up in the Bronx, around older guys, who were not the ... best influence.  When his Father passed, the BOP was delay [in]

notifying Petitioner, wherefore, leading Petitioner into a deep
depression, expounding on his PTSD.  With FCI Ray Brook having
NO psychologist, further damaged Petitioner.

Petitioner argues, that Courts have recognized that caring
for a parent when there's no one else to fill that role, const-
titutes [a]n "extraordinary and compelling reason to grant ...
Compassionate release.  See United States v Bucci, 409 F Supp
3d 1, 2 (D Mass 2019)(when a defendant is the "only available
caregiver" for [a]n incapacitated parent - perhaps a more uni-
que occurrence, given that inmates may have siblings or other
family members, able to care for their parents - then, it is ...
likewise [a]n "extraordinary and compelling reason" warranting
compassionate release); United States v Riley, No: 2:12-cr-62,
2020 US Dist LEXIS 82909 (D VT May 12, 2020)(Compassionate Rel-
ease granted, based on age, asthma and defendant's father's []
failing health and his being the only person available to pro-
vide his father's daily care); United States v Hernandez, Case
No 16-20091, 2020 US Dist LEXIS 135952 (SD Fla 4/3/2020)(extra-
ordinary and compelling reasonss warranting a compassionate re-
lease reduction, where defendant was the only possible caregiv-
er for his 84 year old mother, suffering from degenerative ...
ocular disease and cancer (in remission) that renders here ...
functionally blind and has mobility issues); see also United
States v Lisi, 440 F Supp 3d 246, 2020 US Dist LEXIS 31127 []
SDNY 2/24/2020 - (Court found that if the defendant's claims

are factually accurate, and he is the only person capable of []
caring for his Mother, then that would constitute [a]n extraor-
dinary and compelling reason for compassionate release); United
States v Nagi, No 06-cr-20465, 2021 US Dist LEXIS 212151, 2021
WL 5114579, at *5 (ED Mich 11/3/2021)("[t]his court finds [t]he
need to care for [a]n incapacitated parent to be [a]n extraord-
inary and compelling reason for a sentence modification, where
there are no other caregivers available"); United States v Wood
No 5:13-cr-00053-KDB-DCK (citation omitted); see United States
v Yoda, No 15 cr 2020, US Dist LEXIS 166758, 2020 WL 5502325,
at *2 (SDNY 11/11/2020 ("the need to care for one's aging and
sick parent ... warrant a finding of extraordinary and compell-
ing reason exists"); United States v Wooten, No 3:13-cr-18 SRU,
2020 US Dist LEXIS 191940, 2020 WL 6119321, at *4 (D Conn 10/16
2020)(citation omitted).

Petitioner WILFREDO GONZALEZ, maintans that his need to []
care for and assist his elderly mother, constitutes [a]n extra-
ordinary and compelling reason for a reduction in sentence.  As
noted by multiple district courts, "[a] defendant's status [a]s
the only available caregiver to a close family member, consit-
ute's [a]n extraordinary and compelling reason for a sentence
reduction.

Petitioner avers, that this Honorable Court was aware of
his Mother's medical issues, during pre-trial proceedings, []
and since, her condition has declined.

Pg 26 of 30

§ § § § § §

## F. POST CONVICTION REHABILITATION - 3553(a) FACTORS

In light of the Supreme Court ruling in Pepper v United []
States, Petitioner, WILFREDO GONZALEZ, has demonstrated extreme
post conviction rehabilitation.  See Exhibit E, Bureau of Pri-
sons, Educational / Vocational Transcripts.

Petitioner avers, furthermore, he has not have any disci-
planary infractions.  Evidence of post-sentence rehabilitation,
is a critical core of consideration for the Court in a § 3582(c)
proceeding.  See Pepper v United States, 562 US 476, 492, 131
SCt 1229, 1242 (2011)(stating "[p]ost-sentencing rehabilitation
may also critically inform a sentencing judge's overarching duty
under § 3553(a), to "impose a sentence sufficient, but not gre-
ater than necessary, to comply with the sentencing purposes set
forth in § 3553(a)(2)").

Petitioner asserts, accordingly, that evidence of rehabi-
litation and behavioral progress, should also be considered as
relevant, to the § 3553(a) factors.  See Lancaster, 997 F3d at
175 (and in considering the § the 3553(a) factors, the Court
can take into consideration and account, a defendant's conduct
after his initial sentencing); United States v McDonald, 986 F
3d 402, 410-412 (4th Cir 2021)(noting that on a motion to ...
reduce sentence under the First Step Act, the District Court
must consider defendant's post sentencing conduct); United St-

ates v Rudisili, 834 Fed App'x 827, 829 (4th Cir 2021)(finding district judge abused his discretion in denying motion [un]der FSA without addressing defendant's post sentencing conduct).

Petitioner argues, that in the midst of the global pandemic, it has "[s]ufficiently increased the "severity" of his sentence, beyond what was originally anticipated as such, that the purpose of sentencing was fully met, even with the proposed reduction.  See United States v Park, 456 F Supp 557, 2020 WL 1970603 at *5 (SDNY 2020)(citation omitted).

Petitioner argues, that he is not requesting the Court too reconsider his original sentence as just,  but to assess whether his circumstances have changed ... [his Beloved Mother's incapacitation] that would be inequitable to continue the confinement of prisoner.  See United States v Ebbers, 432 F Supp 3d 421 430 (SDNY 2020)(discussing legislative history of provision);[] United States v Roney, No 20-1834, 833 Fed App'x 850, 2020  US App LEXIS 34890 at *7 (2nd Cir 11/2/2020)(quoting Ebbers ... for the propostition that "a compassionate release motion," is not [a]n opportunity to second guess or to reconsider the sentencing courts original decisions).

In other words, the issue is whether the orginal § 3553 [] factors, "outweigh the 'extraordinary and compelling reasons' warranting compassionate release," and in particular, "whether compassionate release would undermine the goals of the original sentence."  432 F Supp 3d 421, [WL] at *7.

Pg 28 of 30

Petitioner asserts, that he is a non-violent offender and has sincere remorse, for his past criminal behavior and indiscretions.  He urges this Honorable Court to find, that the [§] 3553 factors do not counsel against granting the requested ... relief in this action.  See United States v Scparta, No 18 cr 578, 567 F Supp 3d 416, 2020 US Dist LEXIS 68935, 2020 WL 191-0481, at *8 (SDNY 4/20/2020)(noting that non-violent nature of defendant's otherwise serious crimes, weighed in favor of [his] release).

Petitioner asserts, that the length of time he has already served in prison, under harsh conditions, is sufficient to  ... "promote respect for the law ... provide just punishment ... [] and afford adequate deterence.:  See 18 USC § 3553(a)(2)(A)-(2).

Lastly, may it be judicially noted, that Petitioner's ... Beloved Mother, ZANAIDA SILVA, has multiple medical issues which affects her mobility.  And she recently had a "stint" placed in her leg; that traveled from her leg all the way to her brain [] with some form of camera, to monitor her bodily functions.

Petitioner relies on the holding in United States v Kataev, No 16 cr 763-05 (LGS), 2020 US Dist LEXIS 65766, 2020 WL 1862685, at *3 (SDNY 4/14/2020)("release is warranted when Defendant is, in effect, the ONLY available caregiver to family members who [] cannot care for themselves"); that he is the ONLY caregiver, to take care of his elderly mother.  See Exhibit D, Mother's Medical Records.

§ § § § § §

<u>CONCLUSION - PRAYER FOR RELIEF</u>

WHEREFORE, ALL PREMISES CONSIDER[ED], it is Petitioner's Prayer for Relief, WILFREDO GONZALEZ, that this Honorable Court <u>GRANT</u> the following:

1) The appointment of counsel, a CJA appointment, to perfect this pro se filing and facilitate Petitioner's **IMMEDIATE RELEASE**, to be his Mother's caregiver; to care for her;

2) The **EMERGENCY RULING** on this filing, as the conditions @ FCI Ray Brook, are harsh and extreme at the most;

3) Modify Supervised Release, to reflect home confinement, pursuant to 18 USC § 3583(e)(4) and participation in the **FAMILY REUNIFICATION PROGRAM**, to that he can live with and take care of his "<u>ailing</u>" and "<u>incapacitated</u>" Mother, who currently lives alone, and has difficulty with her mobility, due to the amputation of one of her legs;

4) Consider electronic monitoring, with GPS, to satisfy the requirements of this Court, under the § 3553(a) factors.

Or, in the alternative, <u>GRANT</u> Petitioner, whatever the [] Court deems necessary, in terms of relief.

This is Petitioner's Prayer for Relief.  AMEN.

Respectfully submitted on this <u>8th</u> day of March 2023.

/s/ _Wilfredo Gonzalez_

WILFREDO  GONZALEZ

Pg 30 of 30

# Exhibit A

DENIAL OF WARDEN'S REQUEST

EXHIBIT   A

# INMATE REQUEST TO A STAFF MEMBER
## Warden's Response

Name:  GONZALEZ, Wilfredo

Reg. No.:  78696-054            Unit:  Genesee B

You requested a reduction in sentence (RIS) based on your mother-██████ current medical condition, as you contend she has been diagnosed with COVID-19 and now requires your care and support due to the recent passing of your father.

BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides guidance on the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance.

To be considered eligible under Non-Medical Circumstances, you must either have a child who is suddenly without a family member caregiver due to that caregiver's death or incapacitation or your spouse or registered partner is incapacitated and you are the only available caregiver. Accordingly, your RIS request is denied at this time.

If you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.

_S. Lovett_

S. Lovett, Warden

_5/14/20_

Date

# Exhibit B

AFFIDAVIT OF BRIE WILLIAMS, MD

EIGHT [8] PAGES

EXHIBIT   B   [8] PAGES

| | |
|---|---|
| APPLICATION FOR RELEASE FROM CUSTODY | AFFIDAVIT OF BRIE WILLIAMS, M.D. |

I, Brie Williams, hereby affirm as follows:

1.    I am a doctor duly licensed to practice medicine in the State of California.

2.    I am currently a Professor of Medicine at the University of California, San Francisco ("UCSF") in the Geriatrics Division, Director of UCSF's Amend: Changing Correctional Culture Program, as well as Director of UCSF's Criminal Justice & Health Program. In that capacity, my clinical research has focused on improved responses to disability, cognitive impairment, and symptom distress in older or seriously ill prisoners; a more scientific development of compassionate release policies; and a broader inclusion of prisoners in national health datasets and in clinical research.  I have developed new methods for responding to the unique health needs of criminal justice-involved older adults—including an evidence-based approach to reforming compassionate release policies and the design of a new tool to assess physical functioning in older prisoners.   I was previously a consultant for the California Department of Corrections and Rehabilitation, as well as for other state prison systems.

3.    I have extensive experience working with vulnerable populations, in particular the incarcerated and the elderly.

4.      I submit this affidavit in support of any defendant seeking release from custody during the COVID-19 pandemic, so long as such release does not jeopardize public safety and the inmate can be released to a residence in which the inmate can comply with CDC social distancing guidelines.  The statements in this affidavit are based only on the current state of emergency and the circumstances described below.

**The Risk of Infection and Accelerated Transmission of COVID-19 within Jails and Prisons is Extraordinarily High.**

5.      Prisons and jails are not actually isolated from our communities: hundreds of thousands of correctional officers and correctional healthcare workers enter these facilities every day, returning to their families and to our communities at the end of their shifts, bringing back and forth to their families and neighbors and to incarcerated patients any exposures they have had during the day.  Access to testing for correctional staff has been "extremely limited," guards have reported a "short supply" of protective equipment, and prisons are not routinely or consistently screening correctional officers for symptoms.[1]

6.      The risk of exposure is particularly acute in pre-trial facilities where the inmate populations shift frequently.[2]  For example, despite the federal government's guidance to stay

---

[1] Keegan Hamilton, *Sick Staff, Inmate Transfers, and No Tests: How the U.S. Is Failing Federal Inmates as Coronavirus Hits*, Vice (Mar. 24, 2020), https://www.vice.com/en_ca/article/jge4vg/sick-staff-inmate-transfers-and-no-tests-how-the-us-is-failing-federal-inmates-as-coronavirus-hits.

*See also* Daniel A. Gross, *"It Spreads Like Wildfire": The Coronavirus Comes to New York's Prisons*, The New Yorker (Mar. 24, 2020), https://www.newyorker.com/news/news-desk/it-spreads-like-wildfire-covid-19-comes-to-new-yorks-prisons; Josiah Bates, *'We Feel Like All of Us Are Gonna Get Corona.' Anticipating COVID-19 Outbreaks, Rikers Island Offers Warning for U.S. Jails, Prisons*, Time (Mar. 24, 2020), https://time.com/5808020/rikers-island-coronavirus/; Sadie, Gurman, *Bureau of Prisons Imposes 14-Day Quarantine to Contain Coronavirus*, WSJ (Mar. 24, 2020), https://www.wsj.com/articles/bureau-of-prisons-imposes-14-day-quarantine-to-contain-coronavirus-11585093075; Cassidy McDonald, *Federal Prison Workers Say Conflicting Orders on Coronavirus Response Is Putting Lives at Risk*, CBS News (Mar. 19, 2020), https://www.cbsnews.com/news/coronavirus-prison-federal-employees-say-conflicting-orders-putting-lives-at-risk-2020-03-19/.

[2] Emma Grey Ellis, *Covid-19 Poses a Heightened Threat in Jails and Prisons*, Wired (Mar. 24, 2020), https://www.wired.com/story/coronavirus-covid-19-jails-prisons/.

inside and many states' stay-in-place orders, many prosecutors are still arresting individuals and seeking detention.[3]   Pre-trial detention facilities are still accepting new inmates who are coming from communities where COVID-19 infection is rampant.   As of today's date, the Bureau of Prisons is still moving inmates from facility to facility, including prisoners in New York.[4]

7.      Because inmates live in close quarters, there is an extraordinarily high risk of accelerated transmission of COVID-19 within jails and prisons.   Inmates share small cells, eat together and use the same bathrooms and sinks.   They eat together at small tables that are cleaned only irregularly.   Some are not given tissues or sufficient hygiene supplies.[5]   Effective social distancing in most facilities is virtually impossible, and crowding problems are often compounded by inadequate sanitation, such as a lack of hand sanitizer or sufficient opportunities to wash hands.[6]

**Inmate Populations Also Have the Highest Risk of Acute Illness and Poor Health Outcomes if Infected with COVID-19.**

8.      There are more than 2.3 million people incarcerated in the United States[7]

---

[3] Stephen Rex Brown, *'Business as Usual' For Federal Prosecutors Despite Coronavirus, Nadler Writes, Calling for Release of Inmates*, N.Y. Daily News (Mar. 20, 2020), https://www.nydailynews.com/new-york/ny-nadler-doj-inmates-20200320-d6hbdjcuj5aitppi3ui2xz7tjy-story.html.

[4] Courtney Bublé, *Lawmakers, Union Urge Halt to All Prison Inmate Transfers*, Government Executive (Mar. 25, 2020), https://www.govexec.com/management/2020/03/lawmakers-union-urge-halt-all-prison-inmate-transfers/164104/; Hamilton, *Sick Staff, Inmate Transfers*; Luke Barr, *Despite Coronavirus Warnings, Federal Bureau of Prisons Still Transporting Inmates*, ABC News (Mar. 23, 2020),https://abcnews.go.com/Health/warnings-bureau-prisons-transporting-inmates-sources/story?id=69747416.

[5] Justine van der Leun, *The Incarcerated Person Who Knows How Bad It Can Get*, Medium (Mar. 19, 2020), https://gen.medium.com/what-its-like-to-be-in-prison-during-the-coronavirus-pandemic-1e770d0ca3c5 ("If you don't have money, you don't have soap or tissues."); Keri Blakinger and Beth Schwartzapfel, *How Can Prisons Contain Coronavirus When Purrell Is a Contraband?*, ABA Journal (Mar. 13, 2020), https://www.abajournal.com/news/article/when-purell-is-contraband-how-can-prisons-contain-coronavirus.

[6] Rosa Schwartzburg, *'The Only Plan the Prison Has Is to Leave Us To Die in Our Beds'*, The Nation (Mar. 25, 2020), https://www.thenation.com/article/society/coronavirus-jails-mdc/.

[7] Kimberly Kindy et al., *'Disaster Waiting to Happen': Thousands of Inmates Released as Jails and Prisons Face Coronavirus Threat*, Washington Post (Mar. 25, 2020), https://www.washingtonpost.com/national/disaster-waiting-to-happen-thousands-of-inmates-released-as-jails-face-coronavirus-threat/2020/03/24/761c2d84-6b8c-11ea-b313-df458622c2cc_story.html.

approximately 16% of whom are age 50 or older.[8] The risk of coronavirus to incarcerated seniors is high. "Their advanced age, coupled with the challenges of practicing even the most basic disease prevention measures in prison, is a potentially lethal combination."[9] To make matters worse, correctional facilities are often ill-equipped to care for aging prisoners, who are more likely to suffer from chronic health conditions than the general public.

9.      An estimated 39-43% of all prisoners, and over 70% of older prisoners, have at least one chronic condition, some of the most common of which are diabetes, hypertension, and heart problems.[10] According to the CDC, each of these conditions—as well as chronic bronchitis, emphysema, heart failure, blood disorders, chronic kidney disease, chronic liver disease, any condition or treatment that weakens the immune response, current or recent pregnancy in the last two weeks, inherited metabolic disorders and mitochondrial disorders, heart disease, lung disease, and certain neurological and neurologic and neurodevelopment conditions[11]—puts them at a "high-risk for severe illness from COVID-19."[12]

---

[8] Brie Williams *et al.*, *Strategies to Optimize the Use of Compassionate Release from US Prisons*, 110 AJPH S1, S28 (2020), *available at* https://ajph.aphapublications.org/doi/full/10.2105/AJPH.2019.305434; Kimberly A. Skarupski, *The Health of America's Aging Prison Population*, 40 Epidemiologic Rev. 157, 157 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5982810/.

[9] Weihua Li and Nicole Lewis, *This Chart Shows Why the Prison Population is So Vulnerable to COVID-19*, The Marshall Project (Mar. 19, 2020), https://www.themarshallproject.org/2020/03/19/this-chart-shows-why-the-prison-population-is-so-vulnerable-to-covid-19.

[10] Brie A. Williams *et al.*, *How Health Care Reform Can Transform the Health of Criminal Justice-Involved Individuals*, 33 Health Affairs 462-67 (2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4034754/; Brie A. Williams *et al.*, *Coming Home: Health Status and Homelessness Risk of Older Pre-release Prisoners*, 25 J. Gen. Internal Med. 1038-44 (2010), *available at* https://link.springer.com/content/pdf/10.1007/s11606-010-1416-8.pdf; Laura M. Maruschak *et al.*, *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12*, U.S. Dept of Justice (Oct. 4, 2016), at 5, *available at* https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf.

[11] Harvard Health Publishing, *Coronavirus Research Center*, Harvard Medical School (Mar. 25, 2020), https://www.health.harvard.edu/diseases-and-conditions/coronavirus-resource-center.

[12] Centers for Disease Control and Prevention, *Coronavirus Disease 2019: People Who Are at Higher Risk*, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html (last updated Mar. 22, 2020).

10.     However, even many young federal prisoners suffer from asthma, rendering them also very vulnerable to coronavirus.[13]

11.     But it is not only the elderly, or those with preexisting medical conditions that are at risk of coronavirus in a correctional setting.  As of March 23, 2020, New York City reported that "[p]eople ranging in ages from 18 to 44 have accounted for 46 percent of positive tests."[14] Across the United States, 38% of those hospitalized are between the ages of 20 and 54 and 12% of the intensive care patients are between 20 and 44.[15]

12.     This data is of particular concern for inmate populations, since prisoners' physiological age *averages 10 to 15 years older* than their chronological age.[16] Therefore, the consensus of those who study correctional health is that inmates are considered "geriatric, by the age of 50 or 55 years."[17] It is not clear that prison health care administrations are taking accelerated ageing into account when determining the eligibility criteria for age-related screening tools and medical care protocols for coronavirus, potentially leaving large swathes of the prison population at risk.[18]

---

[13] Laura Maruschak, *Medical Problems of Jail Inmates*, Dep't of Justice (Nov. 2006), at p. 2, *available at* https://www.bjs.gov/content/pub/pdf/mpji.pdf.

[14] Kimiko de Freytas-Tamura, *20-Somethings Now Realizing That They Can Get Coronavirus, Too*, N.Y. Times (Mar. 23, 2020), https://www.nytimes.com/2020/03/23/nyregion/nyc-coronavirus-young.html.

[15] *Id.*

[16] Brie A. Williams *et al.*, *Aging in Correctional Custody: Setting a Policy Agenda for Older Prisoner Health Care*, 102 Am. J. Public Health 1475-81 (2012), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3464842/; *see also* Brie Williams *et al.*, *Detained and Distressed: Persistent Distressing Symptoms in a Population of Older Jail Inmates*, 64 J. Am. Geriatrics Soc. 2349-55 (2016), https://onlinelibrary.wiley.com/doi/pdf/10.1111/jgs.14310 ("For example, older jail inmates with an average age of 60 in this study reported poor or fair health [and] chronic lung disease . . . at rates similar to those reported by community-based lower income older adults with an average age of 72.").

[17] Brie A. Williams *et al.*, *The Older Prisoner and Complex Chronic Medical Care* 165-70 in World Health Organization, *Prisons and Health* (2014), https://pdfs.semanticscholar.org/64aa/10d3cff6800ed42dd152fcf4e13440b6f139.pdf.

13.     In one study, we found that inmates who died in hospitals were, on average, nearly two decades younger than non-incarcerated decedents, had significantly shorter hospitalizations, and had higher rates of several chronic conditions including cancer, liver disease and/or hepatitis, mental health conditions, and HIV/AIDS."[19]

**The Entire Community is at Risk If Prison Populations Are Not Reduced**

14.     As the World Health Organization has warned, prisons around the world can expect "huge mortality rates" from Covid-19 unless they take immediate action including screening for the disease.[20]

15.     As of March 24, 2020, at least 38 people involved in the New York City correctional system have tested positive for Covid-19.[21]  Already, three inmates and three staff at federal correctional facilities across the United States have tested positive for the coronavirus, according to the Federal Bureau of Prisons.[22]

16.     Jails and prisons are fundamentally ill-equipped to handle a pandemic.

17.     Medical treatment capacity is not at the same level in a correctional setting as it is in a hospital.  Some correctional facilities have no formal medical ward and no place to quarantine

---

[18] Brie A. Williams *et al.*, *Differences Between Incarcerated and Non-Incarcerated Patients Who Die in Community Hospitals Highlight the Need For Palliative Care Services For Seriously Ill Prisoners in Correctional Facilities and in Community Hospitals: a Cross-Sectional Study*, 32 J. Palliative Med. 17-22 (2018), *available at* https://journals.sagepub.com/doi/pdf/10.1177/0269216317731547.

[19] *Id.* at 20.

[20] Hannah Summers, *'Everyone Will Be Contaminated': Prisons Face Strict Coronavirus Controls*, The Guardian (Mar. 23, 2020), https://www.theguardian.com/global-development/2020/mar/23/everyone-will-be-contaminated-prisons-face-strict-coronavirus-controls.

[21] Ellis, *Covid-19 Poses a Heightened Threat in Jails and Prisons.*

[22] Ryan Lucas, *As COVID-19 Spreads, Calls Grow to Protect Inmates in Federal Prisons*, NPR (Mar. 24, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/03/24/820618140/as-covid-19-spreads-calls-grow-to-protect-inmates-in-federal-prisons.

sick inmates, other than the facilities' Special Housing Unit (SHU).[23]  While the cells in the SHU have solid doors to minimize the threat of viral spread in otherwise overcrowded facilities, they rarely have intercoms or other ways for sick inmates to contact officers in an emergency.[24]  This is particularly dangerous for those with COVID-19 infection since many patients with COVID-19 descend suddenly and rapidly into respiratory distress.[25]

18.     Even those facilities that do have healthcare centers can only treat relatively mild types of respiratory problems for a very limited number of people.[26]  This means that people who become seriously ill while in prisons and jails will be transferred to community hospitals for care. At present, access to palliative care in prison is also limited.

19.     Corrections officers may also be particularly vulnerable to coronavirus due to documented high rates of diabetes and heart disease.[27]  Prison staff in Pennsylvania, Michigan, New York and Washington state have tested positive for the virus, resulting in inmate quarantines. In Washington, D.C., a U.S. marshal who works in proximity to new arrestees tested positive for the virus, meaning dozens of defendants headed for jail could have been exposed.[28]  In New York,

---

[23] MCC New York COVID 19 Policy Memo, Mar. 19, 2020, https://www.documentcloud.org/documents/6818073-MCC-New-York-COVID-19-Policy-Memo.html; Danielle Ivory, *'We are Not a Hospital': A Prison Braces for the Coronavirus*, N.Y. Times (Mar. 17, 2020), https://www.nytimes.com/2020/03/17/us/coronavirus-prisons-jails.html.

[24] Brie Williams *et al.*, *Correctional Facilities in the Shadow of COVID-19: Unique Challenges and Proposed Solutions*, Health Affairs (Mar. 26, 2020), https://www.healthaffairs.org/do/10.1377/hblog20200324.784502/full/.

[25] Lizzie Presser, *A Medical Worker Describes Terrifying Lung Failure From COVID-19–Even in His Young Patients*, ProPublica (Mar. 21, 2020), https://www.propublica.org/article/a-medical-worker-describes--terrifying-lung-failure-from-covid19-even-in-his-young-patients.

[26] Ellis, *Covid-19 Poses a Heightened Threat in Jails and Prisons*; Li and Lewis, *This Chart Shows Why the Prison Population is So Vulnerable to COVID-19*.

[27] Brie Williams, *Role of US-Norway Exchange in Placing Health and Well-Being at the Center of US Prison Reform*, https://ajph.aphapublications.org/doi/10.2105/AJPH.2019.305444 (published Jan. 22, 2020).

[28] Zusha Elinson and Deanna Paul, *Jails Release Prisoners, Fearing Coronavirus Outbreak*, WSJ (Mar. 22, 2020), https://www.wsj.com/articles/jails-release-prisoners-fearing-coronavirus-outbreak-11584885600 ("We're all headed for some dire consequences," said Daniel Vasquez, a former warden of San Quentin and Soledad state prisons in

236 members of the New York Police Department have tested positive for coronavirus and 3,200 employees are sick, triple the normal sick rate.[29]  Two federal prison staffers have also tested positive.[30]

20.    For this reason, correctional health is public health. Decreasing risk in prisons and jails decreases risk to our communities.

21.    Reducing the overall population within correctional facilities will also help medical professionals spread their clinical care services throughout the remaining population more efficiently.   With a smaller population to manage and care for, healthcare and correctional leadership will be better able to institute shelter in place and quarantine protocols for those who remain. This will serve to protect the health of both inmates as well as correctional and healthcare staff.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: San Francisco, California
         March 27, 2020

_____
Dr. Brie Williams

---

California. "They're in such close quarters—some double- and triple-celled—I think it's going to be impossible to stop it from spreading.").

[29] Erin Durkin, *Thousands of NYPD Officers Out Sick Amid Coronavirus Crisis*, Politico (Mar. 25, 2020), https://www.politico.com/states/new-york/albany/story/2020/03/25/thousands-of-nypd-officers-out-sick-amid-coronavirus-crisis-1268960.

[30] Elinson and Paul, *Jails Release Prisoners, Fearing Coronavirus Outbreak*.

# Exhibit C

FIRST STEP ACT RISK ASSESSMENT

FIRST STEP ACT CREDIT ASSESSMENT

NOTE:   WILFREDO GONZALEZ EARNED 365 DAYS OF HIS ... SENTENCE

EXHIBIT C

**FSA Recidivism Risk Assessment (PATTERN 01.03.00)**

Register Number:78696-054, Last Name:GONZALEZ

**U.S. DEPARTMENT OF JUSTICE**                          **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 78696-054 | Risk Level Inmate....: R-LW |
| Inmate Name |   General Level......: R-LW (36) |
|   Last........: GONZALEZ |   Violent Level......: R-LW (17) |
|   First........: WILFREDO | Security Level Inmate: MEDIUM |
|   Middle.......: | Security Level Facl..: MEDIUM |
|   Suffix.......: | Responsible Facility.: RBK |
| Gender.........: MALE | Start Incarceration..: 05/08/2019 |

**PATTERN Worksheet Summary**

| Item | – Value | – General Score | – Violent Score |
|---|---|---|---|
| Current Age | 44 | 14 | 8 |
| Walsh w/Conviction | FALSE | 0 | 0 |
| Violent Offense (PATTERN) | FALSE | 0 | 0 |
| Criminal History Points | 14 | 40 | 15 |
| History of Escapes | 0 | 0 | 0 |
| History of Violence | 1 | 1 | 2 |
| Education Score | HighSchoolDegreeOrGED | -2 | -2 |
| Drug Program Status | NoNeed | -6 | -3 |
| All Incident Reports (120 Months) | 1 | 1 | 1 |
| Serious Incident Reports (120 Months) | 0 | 0 | 0 |
| Time Since Last Incident Report | 19 | 0 | 0 |
| Time Since Last Serious Incident Report | N/A | 0 | 0 |
| FRP Refuse | FALSE | 0 | 0 |
| Programs Completed | 26 | -12 | -4 |
| Work Programs | 0 | 0 | 0 |
| | Total | 36 | 17 |

**PATTERN Worksheet Details**

Item: Programs Completed, Value: 26
General Score: -12, Violent Score: -4
Risk Item Data

| Category | – Assignment | – Start | – Stop |
|---|---|---|---|
| DRG | ED COMP | 03/06/2017 14:22 | |
| EDC | PARENTING1 | 10/08/2019 13:10 | 10/08/2019 13:10 |
| EDC | FICWRITING | 01/08/2020 17:30 | 01/08/2020 17:30 |
| EDC | BLACK HIST | 01/31/2020 13:00 | 01/31/2020 13:00 |
| EDC | PHYSICS | 02/03/2020 08:24 | 02/03/2020 08:24 |
| EDC | SELFSTUDY6 | 04/01/2020 00:01 | 04/01/2020 00:01 |
| EDC | SELFSTUDY7 | 04/01/2020 00:01 | 04/01/2020 00:01 |
| EDC | SELFSTUD15 | 05/01/2020 00:01 | 05/01/2020 00:01 |
| EDC | SELFSTUD10 | 05/04/2020 00:01 | 05/04/2020 00:01 |
| EDC | SELFSTUD11 | 05/04/2020 00:01 | 05/04/2020 00:01 |

EXHIBIT C

**FSA Recidivism Risk Assessment (PATTERN 01.03.00)**

Register Number:78696-054, Last Name:GONZALEZ

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| | | | |
|---|---|---|---|
| EDC | SELFSTUD12 | 05/04/2020 00:01 | 05/04/2020 00:01 |
| EDC | SELFSTUD13 | 05/04/2020 00:01 | 05/04/2020 00:01 |
| EDC | SELFSTUD14 | 05/04/2020 00:01 | 05/04/2020 00:01 |
| EDC | SELFSTUDY4 | 06/01/2020 00:01 | 06/01/2020 00:01 |
| EDC | SELFSTUDY5 | 06/01/2020 00:01 | 06/01/2020 00:01 |
| EDC | SELFSTUD16 | 06/15/2020 00:01 | 06/15/2020 00:01 |
| EDC | SELFSTUD18 | 06/15/2020 00:01 | 06/15/2020 00:01 |
| EDC | SELFSTUDY1 | 06/15/2020 00:01 | 06/15/2020 00:01 |
| EDC | SELFSTUD17 | 07/01/2020 00:01 | 07/01/2020 00:01 |
| EDC | SELFSTUD19 | 07/01/2020 00:01 | 07/01/2020 00:01 |
| EDC | SELFSTUDY8 | 07/15/2020 00:01 | 07/15/2020 00:01 |
| EDC | SELFSTUD20 | 09/01/2020 00:01 | 09/01/2020 00:01 |
| EDC | SELFSTUD21 | 01/02/2021 00:01 | 01/02/2021 00:01 |
| EDC | SELFSTUD22 | 02/01/2021 00:01 | 02/01/2021 00:01 |
| EDC | SELFSTUD23 | 02/20/2021 00:01 | 02/20/2021 00:01 |
| WSP | PAR NATLC | 05/18/2021 12:57 | 05/18/2021 12:57 |

Item: Work Programs, Value: 0
General Score: 0, Violent Score: 0
Risk Item Data
   No Data

EXHIBIT C
## FSA Time Credit Assessment
Register Number:78696-054, Last Name:GONZALEZ

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 78696-054 | Responsible Facility: RBK |
| Inmate Name | Assessment Date.....: 02-11-2023 |
|   Last.............: GONZALEZ | Period Start/Stop...: 09-19-2019 to 02-11-2023 |
|   First............: WILFREDO | Accrued Pgm Days....: 1241 |
|   Middle...........: | Disallowed Pgm Days.: 0 |
|   Suffix...........: | FTC Towards RRC/HC.: 45 |
| Gender...........: MALE | FTC Towards Release.: 365 |
| Start Incarceration: 05-08-2019 | Apply FTC to Release: Yes |

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 09-19-2019 | 02-11-2023 | accrue | 1241 |

  Accrued Pgm Days...: 1241
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 410

---

| # | Start | Stop | Status | Risk Assignment | Risk Asn Start | | Factor |
|---|---|---|---|---|---|---|---|
| 001 | 09-19-2019 | 03-17-2020 | PRESUMPTIVE | FSA R-MED | 04-28-2021 | 1424 | 10 |
| 002 | 03-17-2020 | 09-13-2020 | PRESUMPTIVE | FSA R-MED | 04-28-2021 | 1424 | 10 |
| 003 | 09-13-2020 | 03-12-2021 | PRESUMPTIVE | FSA R-MED | 04-28-2021 | 1424 | 10 |
| 004 | 03-12-2021 | 09-08-2021 | ACTUAL | FSA R-MED | 04-28-2021 | 1424 | 10 |
| 005 | 09-08-2021 | 03-07-2022 | ACTUAL | FSA R-HI | 08-23-2021 | 1123 | 10 |
| 006 | 03-07-2022 | 09-03-2022 | ACTUAL | FSA R-MED | 02-15-2022 | 1505 | 10 |
| 007 | 09-03-2022 | 03-02-2023 | ACTUAL | FSA R-MED | 02-15-2022 | 1505 | 10 |

# Exhibit E

BUREAU OF PRISONS EDUCATIONAL TRANSCRIPTS --
BUREAU OF PRISONS VOCATIONAL TRANSCRIPTS
PSYCHOLOGY SERVICES GROUP PARTICIPATION

EXHIBIT E

```
   RBKEX        *        INMATE EDUCATION DATA       *    03-01-2023
   PAGE 001      *            TRANSCRIPT             *    12:40:02


   REGISTER NO: 78696-054     NAME..: GONZALEZ              FUNC: PRT
   FORMAT.....: TRANSCRIPT     RSP OF: RBK-RAY BROOK FCI


   ------------------------- EDUCATION INFORMATION -------------------------
   FACL ASSIGNMENT DESCRIPTION              START DATE/TIME STOP DATE/TIME
   RBK  ESL HAS    ENGLISH PROFICIENT       10-07-2019 0907 CURRENT
   RBK  GED EARNED GED EARNED IN BOP        04-27-2021 0956 CURRENT


   ------------------------- EDUCATION COURSES -------------------------
   SUB-FACL    DESCRIPTION                  START DATE  STOP DATE EVNT AC LV  HRS
   RBK         BLACK HISTORY                02-16-2023 CURRENT
   RBK         VT ELECTRONICS 7:30-9:30     07-25-2022 CURRENT
   RBK         SMALL BUS.ACCOUNT MW 1230-330 01-25-2023 CURRENT
   RBK         BUSINESS ADVERTISING         01-25-2023 CURRENT
   RBK         ENGLISH COMP 1 MW 7:30-9:30  01-25-2023 CURRENT
   RBK         INTRO MATH CONCEPTS T-730-1030 01-25-2023 CURRENT
   RBK         COLLEGE-ASSOCIATE'S DEGREE   09-01-2021 CURRENT
   RBK         SMALL BUS.ACCOUNT MW 1230-330 09-01-2022 10-14-2022 C  W  I   0
   RBK         MARKETING ESSENT. W-12:30-3:30 09-01-2022 10-14-2022 C  W  I   0
   RBK         INT. MACROECONOMICS MW 500-800 09-01-2022 10-14-2022 C  W  I   0
   RBK         ENGLISH COMP 1 MW 7:30-9:30  09-01-2022 10-14-2022 C  W  I   0
   RBK         HUMAN RESOURCE MAN M-5:30-8:00 07-05-2022 08-26-2022 C  C  P   0
   RBK         ESS. EFFEC. WRIT M/W 3:30-5:00 06-06-2022 08-26-2022 C  C  P   0
   RBK         BUSINESS ORG & MAN M-5:30-8:00 07-05-2022 08-25-2022 C  C  P   0
   RBK         BUS LAW II M/TH 7:30-10:30   01-24-2022 06-07-2022 C  C  P   0
   RBK         INTRO MICROECONOMICS W 530-800 01-24-2022 06-03-2022 C  C  P   0
   RBK         STRESS MANAGEMENT            01-24-2022 06-03-2022 C  C  P   0
   RBK         MEANINGS OF LIFE TR12:30-2:30 01-24-2022 06-03-2022 C  C  P   0
   RBK         BUSINESS MATH M/W 5:30-7:30  09-01-2021 12-23-2021 C  C  P   0
   RBK         BUSINESS LAW 1 R 7:30-10:30  09-01-2021 12-23-2021 C  C  P   0
   RBK         PER/FAM HEALTH M 12:30-3:30  09-01-2021 12-23-2021 C  C  P   0
   RBK         ENGLISH COMP 1 MW 7:30-9:30  09-01-2021 12-23-2021 C  C  P   0
   RBK         MY PERSONAL HEALTH JOURNAL   10-01-2021 11-21-2021 P  C  P   4
   RBK         WEIGHT MANAGEMENT            06-13-2021 07-02-2021 P  C  P   4
   RBK         EAT SMART                    05-24-2021 05-24-2021 P  C  P   4
   RBK         GED ENGLISH 9:30-11:30, X4163 01-06-2020 04-27-2021 P  C  P  262
   RBK         ANCIENT EGYPT HISTORY        02-20-2021 03-11-2021 P  C  P   3
   RBK         SOLAR SYSTEM                 02-01-2021 02-24-2021 P  C  P   3
   RBK         ANCIENT ROME HISTORY         01-02-2021 01-22-2021 P  C  P   3
   RBK         MAN-UP- GROWTH & PERS. CHANGE 01-09-2020 11-05-2020 P  C  P  16
   RBK         MEMOIR WRITING               09-15-2020 11-03-2020 P  C  P  12
   RBK         FUNDAMENTALS OF SCI & PHYSICS 02-03-2020 09-17-2020 P  C  P  24
   RBK         CRIME AND PUNISHMENT         09-01-2020 09-11-2020 P  C  P  10
   RBK         GREAT GATSBY                 07-15-2020 07-29-2020 P  C  P  10
   RBK         CANTEBURY TALES              07-01-2020 07-20-2020 P  C  P  10
   RBK         EARLY AMERICAN HISTORY PART 1 07-01-2020 07-20-2020 P  C  P   3
   RBK         COUNT OF MONTE CRISTO        06-15-2020 07-13-2020 P  C  P  10
   RBK         EARLY AMERICAN HISTORY PART 2 06-15-2020 07-13-2020 P  C  P   3
   RBK         NATURAL DISASTERS            06-15-2020 07-09-2020 P  C  P   3
   RBK         INTRODUCTION TO MEDITATION   06-24-2020 07-08-2020 P  C  P   4


   G0002       MORE PAGES TO FOLLOW . . .
```

EXHIBIT E

```
RBKEX            *        INMATE EDUCATION DATA         *      03-01-2023
PAGE 002 OF 002 *            TRANSCRIPT                 *      12:40:02
```

```
REGISTER NO: 78696-054      NAME..: GONZALEZ              FUNC: PRT
FORMAT.....: TRANSCRIPT      RSP OF: RBK-RAY BROOK FCI
```

----------------------------- EDUCATION COURSES -----------------------------

| SUB-FACL | DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|----------|-------------|------------|-----------|------|----|----|----|
| RBK | NATIVE SUN | 06-01-2020 | 06-25-2020 | P | C | P | 10 |
| RBK | TO KILL A MOCKINGBIRD | 06-01-2020 | 06-25-2020 | P | C | P | 10 |
| RBK | AFRICAN AMERICAN HISTORY | 05-04-2020 | 05-20-2020 | P | C | P | 3 |
| RBK | WWI | 05-04-2020 | 05-20-2020 | P | C | P | 3 |
| RBK | WWII | 05-04-2020 | 05-20-2020 | P | C | P | 3 |
| RBK | FAMOUS ATHLETES | 05-04-2020 | 05-20-2020 | P | C | P | 3 |
| RBK | CONTINENTAL DRIFT | 05-04-2020 | 05-20-2020 | P | C | P | 3 |
| RBK | SPACE ADDRESS | 05-01-2020 | 05-13-2020 | P | C | P | 3 |
| RBK | DIARY OF ANNE FRANK | 04-01-2020 | 05-12-2020 | P | C | P | 10 |
| RBK | GREAT EXPECTATIONS | 04-01-2020 | 04-17-2020 | P | C | P | 10 |
| RBK | FICTIONAL WRITING | 01-08-2020 | 03-19-2020 | P | C | P | 14 |
| RBK | BLACK HISTORY | 01-31-2020 | 03-19-2020 | P | C | P | 16 |
| RBK | FUNDAMENTALS OF SCI & PHYSICS | 12-02-2019 | 01-22-2020 | P | C | P | 24 |
| RBK | GED M-F 730-930, X4166 | 10-10-2019 | 01-03-2020 | C | C | P | 0 |
| NYM M | GED PRETRI TUTOR BASED CLASS | 06-14-2018 | 12-16-2019 | P | W | I | 20 |
| RBK | PARENTING PROGRAM PART 1 | 10-08-2019 | 11-20-2019 | P | C | P | 20 |
| RBK | INFORMATIONAL JOB FAIR | 11-05-2019 | 11-05-2019 | P | C | P | 3 |
| RBK | MOCK JOB FAIR | 10-29-2019 | 11-05-2019 | P | C | P | 9 |
| NYM M | FDIC MONEY SMART SKILL 1 | 07-23-2018 | 01-14-2019 | P | C | P | 3 |
| NYM M | REFLECTIONS TUESDAY 9:00-10:30 | 11-28-2017 | 03-07-2018 | P | C | P | 15 |
| NYM M | CHILD SUPPORT SEMINAR CLASS | 12-18-2017 | 12-19-2017 | P | C | P | 2 |
| NYM M | LEAD BY EXAMPLE REVERSE THE TR | 08-08-2017 | 09-12-2017 | P | C | P | 20 |
| NYM M | INSIDE OUT PARENTING - UNIT | 07-01-2017 | 08-15-2017 | P | C | P | 20 |
| NYM M | BASIC BOOKKEEPING | 05-29-2017 | 07-06-2017 | P | C | P | 12 |
| NYM M | ENTREPRENEURSHIP | 03-15-2017 | 04-27-2017 | P | C | P | 20 |
| NYM M | ENTREPRENEURSHIP | 02-01-2017 | 04-20-2017 | P | C | P | 20 |
| NYM M | BUSINESS ACUMEN CORP TRAINING | 02-01-2017 | 03-31-2017 | P | C | P | 20 |

----------------------------- HIGH TEST SCORES -----------------------------

| TEST | SUBTEST | SCORE | TEST DATE | TEST FACL | FORM | STATE |
|------|---------|-------|-----------|-----------|------|-------|
| GED READY | MATH | 146.0 | 12-18-2020 | RBK | RG | DC |
| | RLA | 147.0 | 11-10-2020 | RBK | RE | DC |
| | SCIENCE | 147.0 | 03-10-2020 | RBK | RF | DC |
| | SOC STUDY | 152.0 | 12-18-2020 | RBK | RC | DC |
| GED 2014 | MATH | 145.0 | 12-22-2020 | RBK | | DC |
| | RLA | 146.0 | 12-23-2020 | RBK | | DC |
| | SCIENCE | 146.0 | 04-27-2021 | RBK | | DC |
| | SOC STUDY | 146.0 | 12-22-2020 | RBK | | DC |
| TABE D | MATH APPL | 10.3 | 01-03-2020 | RBK | 10 | |
| | MATH COMP | 4.4 | 10-09-2019 | RBK | 9 | |
| | READING | 7.0 | 01-03-2020 | RBK | 10 | |
| | TOTAL MATH | 7.0 | 01-03-2020 | RBK | 10 | |

G0000      TRANSACTION SUCCESSFULLY COMPLETED

EXHIBIT E

# Bureau of Prisons
# Psychology Services
# Group Participation

**\*\*SENSITIVE BUT UNCLASSIFIED\*\***

| | | | |
|---|---|---|---|
| **Inmate Name:** GONZALEZ, WILFREDO | | **Reg #:** 78696-054 | |
| **Date of Birth:** 02/13/1979 | **Sex:** M | **Facilitator:** (P)Imeri, Darlene PsyD | |
| **Date:** 01/02/2019 | **Group Facility:** NYM | **Group Title:** [84] Anger Management Group | |

**Status:** Enrolled
**Enroll Date:** 01/02/2019   **End Date:**
**Total Hours:** 5.0

## SESSION DATA:

**Number of Sessions:** 5   **First Session Date:** 01/02/2019   **Last Session Date:** 01/30/2019

| Date | Title | Duration | Attendance | Participation | Homework |
|---|---|---|---|---|---|
| 01/30/2019 | The ABCD Model and Thought Stopping | 60 | Complete Session | Good | Satisfactory |
| 01/23/2019 | The Aggressive Cycle | 60 | Complete Session | Good | Satisfactory |
| 01/16/2019 | Anger Control Plans | 60 | Complete Session | Good | Satisfactory |
| 01/09/2019 | Events and Cues | 60 | Complete Session | Good | Satisfactory |
| 01/02/2019 | Overview of Anger Management Treatment | 60 | Complete Session | Good | Not Apply |

| Attendance | | Participation | | Homework | |
|---|---|---|---|---|---|
| Complete Session Present | 100.0 % | Good | 100.0 % | Not Apply | 20.0 % |
| Incomplete Session | 0.0 % | Fair | 0.0 % | Satisfactory | 80.0 % |
| Excused | | Poor | 0.0 % | Unsatisfactory | 0.0 % |
| Incomplete Session Not Excused | 0.0 % | Not Apply | 0.0 % | | |
| Absent Excused | 0.0 % | | | | |
| Absent Not Excused | 0.0 % | | | | |

**Member ID** _212505_

# ETA® INTERNATIONAL
## *Member*



This certificate affirms that

## Alfredo Gonzalez, EM

is a valued member in good standing of ETA® International, a not-for-profit 501 (c) 6 association dedicated to promoting professionalism in electronics-related industries through certification. This membership shall be valid until _November 2023_ with all rights and privileges pertaining thereof.

Acknowledged and agreed upon by the President of ETA® International.

President of ETA® International

*Fostering Excellence Through Certification Since 1978*



# ETA® International
### Certifying Today's Technicians in Tomorrow's Technologies

5 Depot Street
Greencastle, IN 46135
(800) 288-3824
(765) 653-8262
(765) 653-4287 Fax
eta@etai.org
www.etai.org

**LEADERSHIP**

**President**
Bryan Allen, CSM, CSS

**Financial Director**
Cindy Reed, CSS

**BOARD OF DIRECTORS**

**Chairman**
Ira Wiesenfeld, PE, CEMm(RF)
IWATES
Dallas, TX

**Vice Chairman**
William Bailey, PhD
Embry-Riddle Aeronautical University
Indianapolis, IN

**Secretary**
Christopher Miller, CETa
Heartland Community College
Towanda, IL

**Treasurer**
William Woodward, PE
Warner Robins AFB
Virginia Beach, VA

**Board of Masters Division Chair**
Joseph Cooper, CETma, CEMm(IT, RF)
US Navy
San Diego, CA

**Cabling Division Chair**
Paul Nauman, FOT-OSP, DCI
SiteWise
Huntingburg, IN

**Cabling Division Co-Sec/Treas**
Michael Cruz, FOI, CET
US Army
Clarksville, TN

**Cabling Division Co-Sec/Treas**
Sean Sheedy, FOT-OSP, FOI
Light Brigade
Meridian, ID

**Certified Technician Division Chair**
Shane Morris, CETma, CEMm(RF)
Motorola Solutions
Buckley, WA

**Certified Technician Division Sec/Treas**
John Zielinski, CETma
SoPark Corporation
Lackawanna, NY

**Communications Division Chair**
John Baldwin, CETa
Festival, MN

**Communications Division Sec/Treas**
Jay Thompson, CETa
Tactical RF
Pittsboro, IN

**Director of Student Chapter Relations**
Richard Booth
Empire High School CTE
Tucson, AZ

**Education Division Chair**
Shirley Brown-Harrison
Tennessee College of Applied Technology
Hohenwald, TN

**Education Division Sec/Treas**
T.B. Givens, STS, FOT-OSP, ITS
Wharton County Junior College
Rosenberg, TX

**International Division Chair**
John Bohlsen, CESma, CESmi(RF)
Brampton, ON, Canada

**Renewable Energy Division Chair**
Jay Warwick, PV2, SWI
Blue Rock Station
Philo, OH

**Shop Owners Division Chair**
Terry Zaccarino, CET
Fairfax, VA

**Shop Owners Division Sec/Treas**
Armando Montiel, CETsr
RZ Communications
Laredo, TX

November 09, 2022

Alfredo Gonzalez EM
1211 Southern Blvd Apt 706
Bronx, NY  10459

Dear Alfredo Gonzalez,

On behalf of everyone here at ETA® International, I would like to welcome you to our organization.

Enclosed are several membership documents for you to review and keep for personal use- a new wallet card and wall certificate.

It is an exciting time for many of our programs as we continue to raise the bar by:

- Collaborating with industry professionals and promoting the success of our members.
- Doubling our membership, there is VALUE in numbers, and we value having YOU!
- Contributing to participating individuals, institutions, corporations, and government agencies for educational and financial advantage.
- Enhancing our membership programs by facilitating exchanges between our students, individual, educational institutions, and corporate members.
- Connecting members with key employers and vice versa.
- Executing an effective workforce to create a competitive edge for tomorrow's top-performing organizations.

Also, by strengthening our membership and certification programs, ETA will continue to enhance the earnings of our members. The value of our membership offers excellent resources such as:

- Keeping technical skills up-to-date with our study materials, and then validating them through our certification programs.
- ETA's bi-monthly magazine, *High Tech News;* full of technical articles and tips, member profiles and listings.
- Communicating with other members through our regular "members-only" technical publications, forums, conferences, and more!
- Participating in association and educational seminars.
- Receiving discounts on various industry publications, conferences, events, and associations such as RCA where you receive a 5% discount off membership.

If we can assist you in any way, please contact us by phone, (800) 288-3824, e-mail: eta@etai.org, or through our website, www.etai.org.

Once again, Welcome to ETA!

Sincerely,

Bryan Allen, CSM, CSS
President







Attached is your personal certification
identification card from ETA® International.

It represents:

· Independent verification of industry knowledge and skills
· Commitment to excellence in an electronics-related field
· Professional competency

Congratulations on becoming certified!

www.etai.org



**ETA® CERTIFIED**

**EM1263420**

**DC Electronics Module**

Alfredo Gonzalez
1211 Southern Blvd Apt 706
Bronx, NY   10459

*Bryan Allen*
Bryan Allen, CSM, CSS
President, ETA® International

**Issued-** 11/10/2022
**Expires-** 11/10/2026



# ETA® International

**Certifying Today's Technicians in Tomorrow's Technologies**

3 Depot Street
Greencastle, IN 46135
(800) 288-3824
(765) 653-8262
(765) 653-4287 Fax
eta@etai.org
www.etai.org

**LEADERSHIP**

**President**
Bryan Allen, CSM, CSS

**Financial Director**
Cindy Reed, CSS

**BOARD OF DIRECTORS**

**Chairman**
Jeb Wiesenfeld, PE, CETmi(RF)
WYATSI
Dallas, TX

**Vice Chairman**
William Bailey, PhD
Embry-Riddle Aeronautical University
Indianapolis, IN

**Secretary**
Christopher Miller, CETa
Heartland Community College
Towanda, IL

**Treasurer**
William Woodward, PE
Warner Robins AFB
Virginia Beach VA

**Board of Masters Division Chair**
Joseph Cooper, CETma, CETmi(IT, RF)
US Navy
San Diego, CA

**Cabling Division Chair**
Paul Newton, FOT-OSP, DCI
SiteWise
Huntingburg, IN

**Cabling Division Co-Sec/Treas**
Michael Cruz, FOI, CET
US Army
Clarksville, TN

**Cabling Division Co-Sec/Treas**
Sean Sheedy, FOT-OSP, FOI
Light Brigade
Meridian, ID

**Certified Technician Division Chair**
Shane Morris, CETma, CETmi(IT, RF)
Motorola Solutions
Buckley, WA

**Certified Technician Division Sec/Treas**
John Zielinski, CETma
Softek Corporation
Jacksonville, NY

**Communications Division Chair**
John Baldwin, CETjr
Faribault, MN

**Communications Division Sec/Treas**
Jay Thompson, CETjr
Tri-Tool RF
Pittsboro, IN

**Director of Student Chapter Relations**
Richard Booth
Empire High School CTE
Tucson, AZ

**Education Division Chair**
Shirley Beaver-Morrison
Tennessee College of Applied Technology
Hohenwald, TN

**Education Division Sec/Treas**
J.B. Groves, SIS, FOT-OSP, ITS
Wharton County Junior College
Rosenberg, TX

**International Division Chair**
John Bakkeren, CETma, CETsm(RF)
Brampton, ON, Canada

**Renewable Energy Division Chair**
Jay Warmke, PV2, SWI
Blue Rock Station
Philo, OH

**Shop Owners Division Chair**
Terry Zaccarino, CET
Communications Electronics of Virginia

**Shop Owners Division Sec/Treas**
Armando Montiel, CETsr
EZ Communications
Laredo, TX

Thursday, November 10, 2022

Alfredo Gonzalez , EM1
1211 Southern Blvd Apt 706
Bronx, New York  10459

Dear Alfredo,

Congratulations on passing the Electronics Technicians Association, International, exam!  You have now been registered as a Certified EM1 DC Technician.

| Exam Name: | Score: | Cert Number: |
|---|---|---|
| EM1 109 | 93% | EM1263420 |

Your name will be published in the next issue of ETA's High Tech News magazine.  We urge you to include the initials of your new title behind your name -- it means something.  By becoming ETA certified, you have raised your level of professionalism one more notch.  Thank you for your contribution to the electronics industry.  If you would like your certification logo in electronic format, please email ETA at: eta@etai.org.

Regarding the certification examination itself, ETA has an exam advisory committee of top electronics professionals who continually monitor exam content, and the certification program itself.  We encourage your support in helping to mold the program.  Any suggestions you would like to submit in the areas of mix, wording, context or subject matter would add to the comprehensiveness of this exam.  We welcome your feedback.  To make comments on one or more items, please email them to eta@etai.org.

Recertification takes place every four (4) years and may be accomplished by retesting at the end of each four-year period.  To view this information please visit:  https://www.etai.org.

If this is your first ETA maintainable certification, you will receive a free one-year renewable ETA membership, which will be processed separately.

This certification is valid for four (4) years and is to be maintained annually.  Your first annual maintenance fee will be due one (1) year from the date of certification (shown on your certificate and wallet card) unless already in maintenance program, which follows date of first maintainable certification.  The annual maintenance fee is $25.00 and includes an ETA membership.  At the end of the four (4) year validation period, your certification will automatically be renewed for another four years if all maintenance fees and other requirements are up-to-date.

Again -- Congratulations!

Sincerely,

**Bryan Allen, CSM, CSS
President**



**ICAC**
International Certification
Accreditation Council



ELECTRONICS TECHNICIANS ASSOCIATION

ETA INTERNATIONAL

Issue Date: 11/10/2022
Expiration Date
November 10
2026

EM1

DC Technician

*Certified EM1*
*DC Technician*

**Alfredo Gonzalez, EM1263420**

**Bronx, New York**

has successfully completed the technical examination and requirements to be universally recognized for competency, ability, and knowledge as an EM1-DC Technician. This DC Electronics Module certification consists of five (5) Electronics Modules required for the Associate CET certification.

To be recognized for this credential in DC basics, practicing technicians with less than two (2) years of combined work and electronics training must pass examinations in 12 or more categories of basic DC Electronics to comply with a 75% score. Only well-trained and skilled entry-level technicians are able to accomplish this feat.

Electronics Technicians Association takes great pride in presenting this official recognition to the above named electronics technician. His/her name has been published in the High Tech News journal, embedded in the ETA permanent data base, and is available for recognition by officials of the industry. This may also qualify for EM1-DC Technician identification items or advertise his/her level of accomplishment as a technician.

Congratulations from ETA officers and members, and the electronics industry.

*Bryan Allen*

Bryan Allen, CSM, CSS - President

ETA® International
Greencastle, Indiana
www.eta-i.org

Accredited By
ICAC

## CERTIFICATE OF SERVICE

I, WILFREDO GONZALEZ, hereby certify, that I have served a true and correct copy, for the foregoing instrument, Motion for Compassionate Release, via Certified Mail, Return Receipt, and bearing Merchandise Number:  7021 0350 0000 3619 6832  on this __8th__ day of March 2023, by placing said instrument in the hands of BOP officials at FCI Ray Brook, located in Ray Brook, NY, for forwarding, to the following agency, pursuant to Houston v Lack, 487 US 266 (1988)(utilizing the mailbox rule):

        Clerk, US District Court
        Southern District of NY
        500 Pearl Street
        New York, NY  10007

Executed under the pains and penalties of perjury, pursuant to 28 USC § 1746.

Respectfully submitted on this __8th__ day of March 2023.

/s/ _Wilfredo Gonzalez_

WILFREDO GONZALEZ, #78696-054
FCI Ray Brook
PO Box 900
Ray Brook, NY  12977-0900





LEGAL MAIL

USMP3
SDNY

CRIM DKT AE

RECEIVED
MAR 13 2023
CLERK'S OFFICE
S.D.N.Y.

CERTIFIED MAIL®

7021 0350 0000 3519 6832

WILFREDO GONZALEZ, #78696-054
FCI Ray Brook
PO Box 900
Ray Brook, NY  12977-0900

<⊃ 78696-054 <⊃
Clerk Us District Of Ny
500 Pearl ST
Southern District of NY
NEW YORK, NY 10007
United States



